# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **DATE FILED:** __December 8, 2009__ |
| **v.** | : | **CRIMINAL NO.:** __09-729__ |
| **SADEK MOHAMAD KOUMAIHA,** | : | **VIOLATIONS:** |
| **a/k/a "Sammy,"** | | **18 U.S.C. § 371 (conspiracy - 6 counts)** |
| **MOHAMAD KASSEM SIBAI** | : | **18 U.S.C. §§ 2314 & 21 (transportation of** |
| **HASSAN MAHMOUD KOUMAIHA** | | **stolen goods - 21 counts)** |
| **ALI-IBRAHIM EL SAYED ABDALLAH** | : | **18 U.S.C. §§ 2320 & 21 (trafficking in** |
| **MOHAMAD MAJED** | | **counterfeit goods - 4 counts)** |
| **BILAL HUSSEIN HAMDEN,** | : | **18 U.S.C. § 1001 (false statements to** |
| **a/k/a "Billy"** | | **government official - 2 counts)** |
| **SHADY ANIS GHADBAN,** | : | **18 U.S.C. § 1960 (conducting an** |
| **a/k/a "Danny"** | | **unlicensed money transmitting business - 1** |
| **ALI KASSEM EL-SIBAI** | : | **count)** |
| **KASSEM EL-SIBAI** | | **18 U.S.C. § 2 (aiding and abetting)** |
| **ALI ABBAS ABOU-KHALIL** | : | **Notice of forfeiture** |

## SUPERSEDING INDICTMENT

## COUNT ONE

### (Conspiracy to Transport Stolen Goods)

**THE GRAND JURY CHARGES THAT:**

      1.     From in or about January 2007 through in or about November 2009, in

Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy,"**
**MOHAMAD KASSEM SIBAI,**
**HASSAN MAHMOUD KOUMAIHA,**
**ALI-IBRAHIM EL SAYED ABDALLAH,**
**MOHAMAD MAJED, and**
**ALI ABBAS ABOU-KHALIL,**

conspired and agreed with others known and unknown to the grand jury to commit offenses against

the United States, that is, to transport in interstate and foreign commerce goods and merchandise with a value in excess of $5,000, knowing the same to have been stolen, converted and taken by fraud, in violation of Title 18, United States Code, Sections 2314(a) and 21.

## MANNER AND MEANS

It was part of the conspiracy that:

2.      Defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI, HASSAN MAHMOUD KOUMAIHA, ALI-IBRAHIM EL SAYED ABDALLAH, MOHAMAD MAJED, and ALI ABBAS ABOU-KHALIL, and others known and unknown to the grand jury, participated in the purchase of hundreds of thousands of dollars worth of goods and merchandise from a law enforcement officer acting in an undercover capacity (the "UC"), namely, laptop computers, Sony PlayStation 2 systems, and cellular telephones (including various Tracfone and Boost models).  The UC represented to the defendants that the goods and merchandise were stolen.

3.      The defendants and others, known and unknown to the grand jury, purchased the purportedly stolen goods and merchandise from the UC in Philadelphia and thereafter caused the goods and merchandise to be transported out of Pennsylvania to designated destinations, including Michigan, New York, Dubai, Morocco, Lebanon, and Hong Kong.  Prior to shipment overseas, the defendants and others, known and unknown to the grand jury, repackaged many of the Tracfone and Boost cellular telephones.

## OVERT ACTS

In furtherance of this conspiracy, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI, HASSAN MAHMOUD KOUMAIHA, ALI-

IBRAHIM EL SAYED ABDALLAH, MOHAMAD MAJED, and ALI ABBAS ABOU-KHALIL, and others known and unknown to the Grand Jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.     In or about January 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," contacted the UC via telephone to discuss the purchase of purportedly stolen cellular telephones.

2.     On or about February 1, 2007, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 835 purportedly stolen cellular telephones.

3.     On or about February 14, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and discussed future purchases of purportedly stolen goods, including cellular telephones, from the UC.

4.     On or about February 28, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,160 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made payment to the UC via wire transfer.

5.     On or about March 30, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 900 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made payment to the UC via wire transfer.

6.     On or about April 13, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,100 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made

payment to the UC via wire transfer.

7.      On or about May 3, 2007, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 1,500 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made payment to the UC via wire transfer.

8.      On or about May 19, 2007, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 1,500 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made payment to the UC via wire transfer.

9.      On or about May 29, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made payment to the UC via wire transfer.

10.     On or about June 26, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,500 purportedly stolen cellular telephones, and defendant ALI ABBAS ABOU-KHALIL made payment to the UC via wire transfer.

11.     On or about July 19, 2007, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

12.     On or about August 11, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

4

13.     On or about September 7, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

14.     On or about September 22, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 2,000 purportedly stolen cellular telephones.

15.     On or about September 27, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

16.     On or about October 3, 2007, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 3,150 purportedly stolen cellular telephones and approximately 100 purportedly stolen Sony PlayStation 2 systems.

17.     On or about October 13, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

18.     On or about October 20, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

19.     On or about November 5, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 1,000 purportedly stolen cellular telephones.

20.     On or about February 13, 2008, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," directed the UC in Philadelphia to ship approximately 10 purportedly stolen laptop computers to a specified address in Beirut, Lebanon.

21.     In or about March 2008, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," directed the UC in Philadelphia to ship approximately 100 purportedly stolen  Sony PlayStation 2 systems to a specified address in Casablanca, Morocco.

22.     On or about May 3, 2008, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA, and ALI-IBRAHIM EL SAYED ABDALLAH met the UC in Philadelphia and took possession of approximately 3,500 purportedly stolen cellular telephones, removed them from their packaging, and repackaged them for overseas shipping by the UC.

23.     On or about May 3, 2008, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," directed the UC in Philadelphia to ship approximately 3500 repackaged purportedly stolen cellular telephones to a specified address in the United Arab Emirates.

24.     On or about November 1, 2008, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA, and MOHAMAD MAJED met the UC in Philadelphia and took possession of approximately 4,105 purportedly stolen cellular telephones, removed 1,680 from their packaging, and repackaged them for overseas shipping by the UC.

25.     On or about November 1, 2008, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," directed the UC in Philadelphia to ship 1,680 of the repackaged cellular telephones to a specified address in Hong Kong.

26.     On or about November 1, 2008, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA, and MOHAMAD MAJED took possession of approximately 2,425 purportedly stolen cellular telephones and transported them to Michigan.

27.     On or about March 26, 2009, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMAD KASSEM SIBAI met the UC in Philadelphia and discussed their continued purchasing of stolen property.  Defendant MOHAMAD KASSEM SIBAI stated, among other things, that he had been involved in all of defendant SADEK MOHAMAD KOUMAIHA's purchases of purportedly stolen property from the UC.

28.     On or about September 16, 2009, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and advised the UC that he would travel to Philadelphia in mid-November to take possession of approximately 6,500 purportedly stolen cellular telephones.

29.     On or about November 22, 2009, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA, ALI-IBRAHIM EL SAYED ABDALLAH, and MOHAMAD MAJED traveled to Philadelphia to meet the UC and take possession of approximately 6,500 purportedly stolen cellular telephones.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH TWENTY-TWO

### (Transportation of Stolen Goods)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about each of the dates listed below (each date constituting a separate count of this indictment), in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy,"**
**MOHAMAD KASSEM SIBAI,**
**HASSAN MAHMOUD KOUMAIHA,**
**ALI-IBRAHIM EL SAYED ABDALLAH,**
**MOHAMAD MAJED,**
**BILAL HUSSEIN HAMDEN,**
**a/k/a "Billy," and**
**ALI ABBAS ABOU-KHALIL,**

unlawfully transported in interstate and foreign commerce goods and merchandise with a value in excess of $5,000, as described in the chart below, and aided and abetted and willfully caused the transportation of such goods and merchandise, knowing the goods and merchandise to have been stolen, converted and taken by fraud:

| COUNT | DEFENDANTS | DATE (on or about) | REPRESENTED STOLEN GOODS (approx.) | PURCHASE PRICE BY DEFENDANT(S) (approx.) |
|-------|-----------|--------------------|-----------------------------------|------------------------------------------|
| 2 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA BILAL HUSSEIN HAMDEN, a/k/a "Billy," MOHAMAD KASSEM SIBAI | February 1, 2007 | 835 cellular telephones | $23,900 |
| 3 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | February 28, 2007 | 1,160 cellular telephones | $22,000 |

| COUNT | DEFENDANTS | DATE (on or about) | REPRESENTED STOLEN GOODS (approx.) | PURCHASE PRICE BY DEFENDANT(S) (approx.) |
|---|---|---|---|---|
| 4 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | March 30, 2007 | 900 cellular telephones | $33,000 |
| 5 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | April 13, 2007 | 1,100 cellular telephones | $33,000 |
| 6 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | May 3, 2007 | 1,500 cellular telephones | $24,500 |
| 7 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | May 19, 2007 | 1,500 cellular telephones | $51,500 |
| 8 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | May 29, 2007 | 1,000 cellular telephones | $16,000 |
| 9 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI ALI ABBAS ABOU-KHALIL | June 26, 2007 | 1,500 cellular telephones | $51,500 |
| 10 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | July 19, 2007 | 1,000 cellular telephones | $28,000 |
| 11 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | August 11, 2007 | 1,000 cellular telephones | $35,000 |
| 12 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | September 7, 2007 | 1,000 cellular telephones | $21,000 |
| 13 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | September 22, 2007 | 2,000 cellular telephones | $56,000 |

| COUNT | DEFENDANTS | DATE (on or about) | REPRESENTED STOLEN GOODS (approx.) | PURCHASE PRICE BY DEFENDANT(S) (approx.) |
|---|---|---|---|---|
| 14 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | September 27, 2007 | 1,000 cellular telephones | $35,000 |
| 15 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA MOHAMAD KASSEM SIBAI | October 3, 2007 | 3,150 cellular telephones and 100 Sony PlayStation 2 systems | $87,200 |
| 16 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | October 13, 2007 | 1,000 cellular telephones | $34,300 |
| 17 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | October 20, 2007 | 1,000 cellular telephones | $21,000 |
| 18 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | November 5, 2007 | 1,000 cellular telephones | $21,000 |
| 19 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | February 25, 2008 | 10 laptop computers | $6,000 |
| 20 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMAD KASSEM SIBAI | April 2, 2008 | 100 Sony PlayStation 2 systems | $8,500 |
| 21 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA ALI-IBRAHIM EL SAYED ABDALLAH MOHAMAD KASSEM SIBAI | May 3, 2008 | 3,500 cellular telephones | $80,500 |
| 22 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA MOHAMAD MAJED MOHAMAD KASSEM SIBAI | November 1, 2008 | 4,105 cellular telephones | $80,095 |

In violation of Title 18, United States Code, Sections 2314, 21, and 2.

## COUNT TWENTY-THREE

### (Conspiracy to Traffic in Counterfeit Goods)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      From in or about June 2007 through in or about November 2009, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy,"**
**MOHAMMAD KASSEM SIBAI,**
**HASSAN MAHMOUD KOUMAIHA,**
**SHADY ANIS GHADBAN,**
**a/k/a "Danny," and**
**KASSEM EL-SIBAI,**

conspired and agreed with others known and unknown to the grand jury to commit offenses against the United States, that is, to intentionally traffic in counterfeit goods and goods represented to be counterfeit, in violation of Title 18, United States Code, Sections 2320 and 21.

### MANNER AND MEANS

It was part of the conspiracy that:

2.      Defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," MOHAMMAD KASSEM SIBAI, HASSAN MAHMOUD KOUMAIHA, SHADY ANIS GHADBAN, a/k/a "Danny," and KASSEM EL-SIBAI, and others known and unknown to the grand jury, participated in the purchase of several thousand dollars worth of counterfeit goods and/or goods represented to be counterfeit — namely, Nike® shoes and a variety of brands of cellular telephones — from a law enforcement officer acting in an undercover capacity ("the UC").

### OVERT ACTS

In furtherance of this conspiracy, defendants SADEK MOHAMAD KOUMAIHA,

a/k/a "Sammy,"  MOHAMMAD KASSEM SIBAI, HASSAN MAHMOUD KOUMAIHA, SHADY ANIS GHADBAN, a/k/a "Danny," and KASSEM EL-SIBAI, and others known and unknown to the Grand Jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.     On or about June 27, 2007, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," met the UC in Philadelphia and took possession of approximately 590 pairs of counterfeit Nike® shoes.

2.     On or about April 10, 2009, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMMAD KASSEM SIBAI met the UC in Philadelphia and took possession of approximately 1,100 pairs of counterfeit Nike® shoes.

3.     On or about June 24, 2009, defendant MOHAMAD KASSEM SIBAI met the UC in Philadelphia and negotiated a deal whereby defendant SIBAI would send large quantities of counterfeit goods to the UC in Philadelphia as a way to obscure defendant SIBAI's connection to the counterfeit goods.

4.     On or about August 15, 2009, defendants MOHAMAD KASSEM SIBAI, SHADY ANIS GHADBAN, a/k/a "Danny," and KASSEM EL-SIBAI met the UC in Philadelphia and took possession of approximately 850 counterfeit cellular telephones (including Motorola, Nokia, Samsung, and BlackBerry brands) that defendant SIBAI had caused to be shipped to the UC.

5.     On or about September 16, 2009, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and HASSAN MAHMOUD KOUMAIHA met the UC in Philadelphia and took possession of approximately 1,000 pairs of counterfeit Nike® shoes.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWENTY-FOUR THROUGH TWENTY-SEVEN

### (Trafficking in Counterfeit Goods)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about each of the dates listed below (each date constituting a separate count of this indictment), in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy,"**
**MOHAMAD KASSEM SIBAI,**
**HASSAN MAHMOUD KOUMAIHA,**
**SHADY ANIS GHADBAN,**
**a/k/a "Danny," and**
**KASSEM EL-SIBAI,**

intentionally trafficked and attempted to traffic in goods, and aided and abetted the trafficking of such goods, specifically, Nike® shoes and a variety of brands of cellular telephones, as described below, which were counterfeit and represented to be counterfeit, and knowingly used on and in connection with such goods counterfeit marks, that is spurious marks identical to and substantially indistinguishable from the shape and imprints found on genuine Nike® shoes and cellular telephones (including Motorola, Nokia, Samsung, and BlackBerry brands), which marks were in use and were registered for those products by that company on the principal register of the United States Patent and Trademark Office, the use of which counterfeit marks was likely to cause confusion, to cause mistake and to deceive:

13

| COUNT | DEFENDANT(S) | DATE (on or about) | COUNTERFEIT GOODS (approx.) |
|---|---|---|---|
| 24 | SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy" | June 26, 2007 | 590 pairs of Nike® shoes |
| 25 | SADEK MOHAMAD KOUMAIHA a/k/a "Sammy," MOHAMAD KASSEM SIBAI | April 10, 2009 | 1,100 pairs of Nike® shoes |
| 26 | MOHAMAD KASSEM SIBAI SHADY ANIS GHADBAN, a/k/a "Danny" KASSEM EL-SIBAI | August 15, 2009 | 850 cellular telephones (including Motorola, Nokia, Samsung, and BlackBerry brands) |
| 27 | SADEK MOHAMAD KOUMAIHA a/k/a "Sammy," HASSAN MAHMOUD KOUMAIHA | September 16, 2009 | 1,000 pairs of Nike® shoes |

In violation of Title 18, United States Code, Sections 2320(a), 21, and 2.

## COUNTS TWENTY-EIGHT THROUGH TWENTY-NINE

### (False Statements to Government Officials)

**THE GRAND JURY FURTHER CHARGES THAT:**

On or about each of the dates listed below (each date constituting a separate count of this indictment), in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendant

### SADEK MOHAMAD KOUMAIHA,
### a/k/a "Sammy,"

in a matter within the jurisdiction of the Department of Commerce, an agency of the executive branch of the United States, knowingly and willfully falsified, concealed, and covered up material facts by trick, scheme, and device, and made materially, false, fictitious, and fraudulent statements and representations, and made and used false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statement and entry, and willfully caused another to do the same, that is, as described in the chart below, defendant KOUMAIHA caused others, including a law enforcement officer acting in an undercover capacity (the "UC"), to submit materially false information to the Department of Commerce in the requisite Shipper's Export Declaration ("SED") that accompanied the following exports from the United States:

15

| Count | Date (on or about) | Items Shipped | False Value on SED | Purchase Price paid by Defendant | Actual Retail Value (approx.) |
|---|---|---|---|---|---|
| **28** | April 2, 2008 | 100 Sony PlayStation 2 systems (falsely described on SED as "refurbished") | $4,750 | $8,500 | $12,999 |
| **29** | May 3, 2008 | 3,000 cellular telephones (falsely described on SED as "refurbished") | $42,000 | $77,050 | $104,000 |

In violation of Title 18, United States Code, Sections 1001 and 2.

## COUNT THIRTY

**(Conspiracy to Conduct an Unlicensed Money Transmitting Business)**

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       From in or about April 2008 through in or about November 2009, in Philadelphia, in the Eastern District of Pennsylvania and elsewhere, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy," and**
**MOHAMAD KASSEM SIBAI**

conspired and agreed with others known and unknown to the grand jury to commit offenses against the United States, that is, to knowingly conduct, control, manage, supervise, direct and own part and all of an unlicensed money transmitting business, which business affected interstate and foreign commerce, that is, (a) a business operated without an appropriate money transmitting license in a state where such operation is punishable as a misdemeanor or a felony under state law, that is, the State of Michigan and the Commonwealth of Pennsylvania, (b) a business required to register with the Financial Crimes Enforcement Network ("FinCEN"), an agency of the United States government, pursuant to Section 5330 of Title 31, United States Code, and (c) a business that otherwise involves the transportation and transmission of funds that are known to the defendants to have been derived from criminal offenses and are intended to be used to promote and support unlawful activity, in violation of Title 18, United State Code, Section 1960.

2.      At all times material to this indictment, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMAD KASSEM SIBAI resided in the State of Michigan.

**MANNER AND MEANS**

It was part of the conspiracy that:

3.      Defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMAD KASSEM SIBAI took possession of cash from a law enforcement officer acting in an undercover capacity (the "UC") for the purpose of transporting, transmitting, and transferring those funds to a bank account outside the United States.  The UC clarified that the cash represented the profits from his illegal businesses, including the interstate transportation of stolen goods and trafficking in counterfeit goods.

4.      Defendant MOHAMAD KASSEM SIBAI advised the UC that the defendants could transport, transmit, and transfer to the UC's foreign bank account approximately $250,000 per transaction.  In further support of this assertion, on or about June 24, 2009, defendant SIBAI told the UC that he transported approximately $100,000 cash every two weeks for a customer in New York.

5.      The defendants were responsible for the successful transportation, transmission, and transfer of a total of approximately $200,000 from Philadelphia to the foreign bank account designated by the UC.  For each transaction, the UC paid a commission to the defendants (approximately 10% - 15% of the amount  transported, transmitted, and transferred).

6.      Defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMAD KASSEM SIBAI did not register this money transmitting business with the United States government and did not obtain a license from the State of Michigan or the Commonwealth of Pennsylvania to operate this money transmitting business.

18

## OVERT ACTS

In furtherance of the conspiracy, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMAD KASSEM SIBAI, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.      On or about April 18, 2008, after taking possession of approximately $57,500 in cash from the UC in Philadelphia, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," agreed to transport, transmit, and transfer approximately $50,000 to a foreign bank account that the UC designated.

2.      On or about July 10, 2008, after taking possession of approximately $55,000 in cash from the UC, which the UC had brought to Chicago from Philadelphia, defendant SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," agreed to transport, transmit, and transfer approximately $50,000 to a foreign bank account that the UC designated.

3.      On or about April 10, 2009, after taking possession of approximately $55,000 in cash from the UC in Philadelphia, defendants SADEK MOHAMAD KOUMAIHA, a/k/a "Sammy," and MOHAMAD KASSEM SIBAI agreed to transport, transmit, and transfer approximately $50,000 to a foreign bank account that the UC designated.

4.      On or about July 23, 2009, after taking possession of approximately $55,000 in cash from the UC in Philadelphia, defendant MOHAMAD KASSEM SIBAI agreed to transport, transmit, and transfer approximately $50,000 to a foreign bank account that the UC designated.

All in violation of Title 18, United States Code, Section 371.

## COUNT THIRTY-ONE

### (Conducting an Unlicensed Money Transmitting Business)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs Two through Six, and Overt Acts One through Four, of Count Thirty are realleged here.

2.      From at least in or about April 2008 through in and about November 2009, in the Eastern District of Pennsylvania and elsewhere, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy," and**
**MOHAMAD KASSEM SIBAI**

knowingly conducted, controlled, managed, supervised, directed and owned part and all of an unlicensed money transmitting business, and aided and abetted the conduct, control, management, supervision, direction and ownership of such a money transmitting business, which business affected interstate and foreign commerce, that is, (a) a business operated without an appropriate money transmitting license in a state where such operation is punishable as a misdemeanor or a felony under state law, that is, the State of Michigan and the Commonwealth of Pennsylvania, (b) a business required to register with the Financial Crimes Enforcement Network ("FinCEN"), an agency of the United States government, pursuant to Section 5330 of Title 31, United States Code, and (c) a business that otherwise involves the transportation and transmission of funds that are known to the defendants to have been derived from criminal offenses and are intended to be used to promote and support unlawful activity.

In violation of Title 18, United State Code, Sections 1960 and 2.

## COUNT THIRTY-TWO

### (Conspiracy to Make False Statements to Government Officials)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     From at least in or about July 2009 through and including in or about November 2009, in the Eastern District of Pennsylvania and elsewhere, defendants

### MOHAMAD KASSEM SIBAI and
### SHADY ANIS GHADBAN,
### a/k/a "Danny,"

conspired and agreed with others known and unknown to the grand jury to commit offenses against the United States, that is, in a matter within the jurisdiction of the Social Security Administration, an agency of the executive branch of the United States, to knowingly and willfully falsify, conceal, and cover up material facts by trick, scheme, and device, and make materially, false, fictitious, and fraudulent statements and representations, and make and use false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statement and entry, in violation of Title 18, United States Code, Section 1001.

### MANNER AND MEANS

2.     It was part of the conspiracy that defendants MOHAMAD KASSEM SIBAI and SHADY ANIS GHADBAN, a/k/a "Danny," and others known and unknown to the grand jury, took steps to submit materially false information to the Social Security Administration and acquire social security numbers for false identities and cards bearing those numbers.

### OVERT ACTS

In furtherance of this conspiracy, defendants MOHAMAD KASSEM SIBAI and SHADY ANIS GHADBAN, a/k/a "Danny," and others known and unknown to the grand jury,

21

committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.      On or about July 21, 2009, defendant MOHAMAD KASSEM SIBAI traveled to Philadelphia and explained to a law enforcement officer acting in an undercover capacity (the "UC") that the conspirators would be very interested in obtaining fraudulent driver's licenses and social security cards from the UC.

2.      On or about November 5, 2009, defendants MOHAMAD KASSEM SIBAI and SHADY ANIS GHADBAN, a/k/a "Danny," traveled to Philadelphia and delivered to the UC applications for social security cards containing materially false information.

All in violation of Title 18, United States Code, Section 371.

## COUNT THIRTY-THREE

### (Conspiracy to Commit Visa Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. From in or about July 2009 through and including in or about November 2009, in the Eastern District of Pennsylvania and elsewhere, defendants

### MOHAMAD KASSEM SIBAI and
### ALI KASSEM EL-SIBAI

conspired and agreed with others known and unknown to the grand jury to commit offenses against the United States, that is, to use, attempt to use, possess, obtain, accept, and receive a visa and other documents prescribed by statute and regulation for entry into and as evidence of authorized stay in the United States, knowing it to be forged, counterfeited, altered, and falsely made, and to have been procured by means of any false claim and statement, and to have been otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Section 1546.

### MANNER AND MEANS

2. At all times material to this indictment, defendant ALI KASSEM EL-SIBAI was a citizen of Lebanon and did not have lawful immigration status in the United States.

3. It was part of the conspiracy that defendants MOHAMAD KASSEM SIBAI and ALI KASSEM EL-SIBAI , and others known and unknown to the grand jury, paid approximately $5,000 cash to a law enforcement officer acting in an undercover capacity (the "UC") in exchange for a tourist visa, which the UC represented to be procured by fraudulent means and which authorized entry into the United States by defendant ALI KASSEM EL-SIBAI.

### OVERT ACTS

In furtherance of this conspiracy, defendants MOHAMAD KASSEM SIBAI and ALI KASSEM EL-SIBAI, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.      On or about August 15, 2009, defendant MOHAMAD KASSEM SIBAI traveled to Philadelphia and delivered a copy of defendant ALI KASSEM EL-SIBAI's Lebanese passport to the UC in furtherance of the conspirators' scheme to obtain a tourist visa permitting defendant ALI KASSEM EL-SIBAI to enter the United States.

2.      On or about October 28, 2009, defendant MOHAMAD KASSEM SIBAI traveled to Philadelphia and delivered approximately $5,000 cash to the UC.

3.      On or about November 6, 2009, defendant MOHAMAD KASSEM SIBAI, defendant ALI KASSEM EL-SIBAI, and the UC participated in a conference call where defendant MOHAMAD KASSEM SIBAI and ALI KASSEM EL-SIBAI discussed the illegal procurement of the visa for defendant ALI KASSEM EL-SIBAI by the UC.

All in violation of Title 18, United States Code, Section 371.

## COUNT THIRTY-FOUR

### (Conspiracy to Commit Passport Fraud)

**THE GRAND JURY FURTHER CHARGES THAT:**

1. From in or about July 2009 through and including in or about November 2009, in the Eastern District of Pennsylvania and elsewhere, defendants

**MOHAMAD KASSEM SIBAI,**
**SHADY ANIS GHADBAN,**
**a/k/a "Danny," and**
**KASSEM EL-SIBAI,**

conspired and agreed with others known and unknown to the grand jury to commit offenses against the United States, that is, to willfully and knowingly make a false statement in an application for passport with intent to induce or secure the issuance of a passport under the authority of the United States, either for his own use or the use of another, contrary to the laws regulating the issuance of passports or the rules prescribed pursuant to such laws, in violation of Title 18, United States Code, Section 1542.

### MANNER AND MEANS

At all times material to this indictment:

2. Defendants MOHAMAD KASSEM SIBAI and KASSEM EL-SIBAI were both citizens of Lebanon.

3. Defendant SHADY ANIS GHADBAN, a/k/a "Danny," was a citizen of the United States of America.

4. It was part of the conspiracy that defendant MOHAMAD KASSEM SIBAI facilitated the acquisition of United States passports by defendants SHADY ANIS GHADBAN, a/k/a "Danny," KASSEM EL-SIBAI, and others, through fraudulent means from a law enforcement officer

acting in an undercover capacity (the "UC") in exchange for thousands of dollars in cash.

## OVERT ACTS

In furtherance of this conspiracy, defendants MOHAMAD KASSEM SIBAI, SHADY ANIS GHADBAN, a/k/a "Danny," and KASSEM EL-SIBAI, and others known and unknown to the grand jury, committed the following overt acts in the Eastern District of Pennsylvania and elsewhere:

1.   On or about October 1, 2009, defendant MOHAMAD KASSEM SIBAI agreed to pay approximately $10,000 to the UC for a United States passport in the name of Individual #1.

2.   On or about October 28, 2009, defendant MOHAMAD KASSEM SIBAI traveled to Philadelphia and asked the UC to obtain a United States passport in the name of defendant KASSEM EL-SIBAI.

3.   On or about November 5, 2009, SHADY ANIS GHADBAN, a/k/a "Danny," traveled to Philadelphia and asked the UC to obtain a United States passport under a false name for use by defendant GHADBAN.

4.   On or about November 22, 2009, defendants MOHAMAD KASSEM SIBAI and KASSEM EL-SIBAI traveled to New York City in preparation for a meeting with the UC in Philadelphia.

5.   On or about November 23, 2009, defendant KASSEM EL-SIBAI assured the UC via telephone that he was coming soon to Philadelphia to bring money to the UC in payment for a United States passport.

All in violation of Title 18, United States Code, Section 371.

---

**NOTICE OF FORFEITURE**

**THE GRAND JURY FURTHER CHARGES THAT:**

       1.     As a result of the violations of Title 18, United States Code, Sections 371, 1960, 2314, and 2320 set forth in this Indictment, defendants

**SADEK MOHAMAD KOUMAIHA,**
**a/k/a "Sammy,"**
**MOHAMAD KASSEM SIBAI,**
**HASSAN MAHMOUD KOUMAIHA,**
**ALI-IBRAHIM EL SAYED ABDALLAH,**
**MOHAMAD MAJED,**
**BILAL HUSSEIN HAMDEN,**
**a/k/a "Billy," and**
**SHADY ANIS GHADBAN,**
**a/k/a "Danny,"**
**ALI KASSEM EL-SIBAI**
**KASSEM EL-SIBAI**
**ALI ABBAS ABOU-KHALIL**

shall forfeit to the United States of America

       (a)     Any property, real or personal, which constitutes or is derived from proceeds traceable to any offence constituting "specified unlawful activity," i.e., transportation of stolen goods, or a conspiracy to commit such offense, including but not limited to:

       (1)     the sum of $1,000,000 U.S. currency (forfeiture money judgment).

       (b)     Any article, the making or trafficking of which is, prohibited under section 2320 of Title 18; any property used, or intended to be used, in any manner or part of commit or facilitate, the commission of an offense under section 2320 of Title 18; and any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense under section 2320 of Title 18, including but not limited to:

27

     (1)    the sum of $150,000 U.S. currency (forfeiture money judgment);

     (2)    2,690 pairs of counterfeit Nike shoes;

     (3)    850 counterfeit cellular phones, including Motorola, Nokia, Samsung and Blackberry brands.

     (c)    Any property, real or personal, involved in an offense under Title 18, United States Code, Section 1960, or any property traceable to such property, including but not limited to:

     (1)    the sum of $222,500 U.S. currency (forfeiture money judgment); and

     (2)    funds in Mobile Planet Limited accounts # 411408701838 and # 817229172838 in HSBC Bank, Hong Kong.

     2.    If any of the property subject to forfeiture, as a result of any act or omission of the defendants:

     (a)    cannot be located upon the exercise of due diligence;

     (b)    has been transferred or sold to, or deposited with, a third party;

     (c)    has been placed beyond the jurisdiction of the Court;

     (d)    has been substantially diminished in value; or

     (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), which is incorporated by 28, United States Code, Section 2461(c) and Title 18, United States Code,

Sections 982(b)(1) and 2323(b)(2)(A), to seek forfeiture of any other property of the defendants up to the value of the property subject to forfeiture, including but not limited to:

(a)     a Toyota 4-Runner (and keys), VIN JTEBU14RX40048635, (New York license plate CRM8051), used on or about August 27, 2009 and on or about September 25, 2009;

(b)     a Honda Fit (and keys), VIN JHMGD386X8S030327, (Michigan license plate BWU9174), used on or about August 27, 2009 and on or about September 16, 2009;

(c)     a Honda Accord (and keys), VIN 1HGCP26768A007633, Michigan license plate BPP5697), used on or about June 26, 2009, on or about July 21, 2009, on or about July 22, 2009, on or about July 28, 2009, and on or about September 25, 2009;

(d)     a Toyota RAV-4 (and keys), VIN JT3GP10V4V0014572, (Michigan license plate BSH4762), used on or about April 9, 2008 and on or about May 13, 2008;

(e)     a Ford Explorer (and keys), VIN 1FMEU64E57UB43432, (Michigan license plate BPA5554), used on or about March 26, 2009 and on or about March 27, 2009;

(f)     funds in Mobile Planet Limited accounts # 411408701838 and # 817229172838 in HSBC Bank, Hong Kong;

(g)     funds in accounts of, and assets of, businesses, ELS Wireless, Mobile

Planet Ltd, and Mega Wholesale; and

(h)     U.S. currency seized from the defendants at the time of their arrests

between on or about November 22-23, 2009, including:

(1)     approximately $3,975 cash seized from defendant SADEK

MOHAMAD KOUMAIHA, a/k/a "Sammy;"

(2)     approximately $952 cash seized from defendant MOHAMAD

KASSEM SIBAI;

(3)     approximately $351 cash seized from defendant HASSAN

MAHMOUD KOUMAIHA;

(4)     approximately $805 cash seized from defendant ALI-

IBRAHIM EL SAYED ABDALLAH;

(5)     approximately $123 cash seized from defendant MOHAMAD

MAJED; and

(6)  approximately $79 cash seized from defendant SHADY ANIS

GHADBAN, a/k/a "Danny."


All pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and

2323(b)(1), and Title 28, United States Code, Section 2461(c).


**A TRUE BILL:**


_____

**GRAND JURY FOREPERSON**


_____

**MICHAEL L. LEVY**
**UNITED STATES ATTORNEY**